IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN FLYNN, JAMES BOLAND, GERALD O'MALLEY, KEN LAMBERT, GERARD SCARANO, H. J. BRAMLETT, EUGENE GEORGE, PAUL SONGER, WILLIAM MCCONNELL, CHARLES VELARDO, MATTHEW AQUILINE, GREGORY R. HESS, MICHAEL SCHMERBECK, VINCENT DELAZZERO, and CHARLES COSTELLA as Trustees of, and on behalf of, the BRICKLAYERS & TROWEL TRADES INTERNATIONAL PENSION FUND<br>620 F Street, N.W.<br>Washington, DC 20004<br>(202) 783-3788,<br><br>and<br><br>JIM ALLEN, MATTHEW AQUILINE, LON BEST, JAMES BOLAND, TED CHAMP, RAYMOND CHAPMAN, VINCENT DELAZZERO, BRUCE DEXTER, JOHN FLYNN, EUGENE GEORGE, GREGORY HESS, FRED KINATEDER, DAN KWIATKOWSKI, KEN LAMBERT, SANTO LANZAFAME, DICK LAUBER, WILLIAM MCCONNELL, EDWARD NAVARRO, GERALD O'MALLEY, JOHN PHILLIPS, CHARLES RASO, MARK ROSE, KEVIN RYAN, GERARD SCARANO, MICHAEL SCHMERBECK, PAUL SONGER, JOSEPH SPERANZA, and FRED VAUTOUR as Trustees of, and on behalf of, the INTERNATIONAL MASONRY INSTITUTE<br>620 F Street, N.W.<br>Washington, DC 20004<br>(202) 783-3788,<br><br>Plaintiffs,<br><br>v.<br><br>GENERAL CAULKING & COATINGS CO., INC.<br>101 NW 176th Street<br>Miami, FL 33169,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br><br>Civil Action No. |

DSMDB-2469868

## COMPLAINT

Plaintiffs, by their attorneys, DICKSTEIN SHAPIRO LLP, complaining of the Defendant, allege as follows:

### CAUSE OF ACTION

#### Jurisdiction and Venue

1.  This is an action brought by the fiduciaries of the Bricklayers & Trowel Trades International Pension Fund ("IPF" or "Fund") and the fiduciaries of the International Masonry Institute ("IMI") to enforce the terms of the Plan and Trust Agreements adopted by the IPF and IMI and the provisions of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"). This action arises under the laws of the United States, specifically Section 502(a)(3), 502(g)(2), and 515 of ERISA, 29 U.S.C. §§ 1132(a)(3), 1132(g)(2), 1145. Pursuant to Section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1), jurisdiction is therefore conferred on this Court as to the claims brought on behalf of the IPF and IMI.

2.  The IPF and IMI are administered in the District of Columbia. Venue for the claims asserted by the IPF and IMI are conferred on this Court pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), which provides:

> (2) Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.

2

DSMDB-2469868

**Parties**

3.  Plaintiffs, John Flynn, James Boland, Gerald O'Malley, Ken Lambert, Gerard Scarano, H. J. Bramlett, Eugene George, Paul Songer, William McConnell, Charles Velardo, Matthew Aquiline, Gregory R. Hess, Michael Schmerbeck, Vincent DeLazzero and Charles Costella, are Trustees of, and sue on behalf of, the IPF. The IPF is an "employee benefit plan" within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3), and is a "multiemployer plan" within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37). Plaintiffs bring this action on behalf of, and for the benefit of, the beneficiaries of the IPF in their respective capacities as fiduciaries.

4.  The IPF is also authorized to effect collections on behalf of the IMI, pursuant to a written Assignment of Claims and the Collection Procedures of the Central Collection Unit of the Bricklayers and Allied Craftworkers ("Collection Procedures").

5.  Plaintiffs, Jim Allen, Matthew Aquiline, Lon Best, James Boland, Ted Champ, Raymond Chapman, Vincent Delazzero, Bruce Dexter, John Flynn, Eugene George, Gregory Hess, Fred Kinateder, Dan Kwiatkowski, Ken Lambert, Santo Lanzafame, Dick Lauber, William McConnell, Edward Navarro, Gerald O'Malley, John Phillips, Charles Raso, Mark Rose, Kevin Ryan, Gerard Scarano, Michael Schmerbeck, Paul Songer, Joseph Speranza and Fred Vautour, are Trustees of, and sue on behalf of the IMI. The IMI is an "employee benefit plan" within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3), and is a "multiemployer plan" within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37). The IMI trustees bring this action on

DSMDB-2469868

behalf of, and for the benefit of, the beneficiaries of the IMI in their respective capacities as fiduciaries.

6. Defendant, General Caulking & Coatings Co., Inc. ("General Caulking") is, and at all times hereinafter mentioned was, a company maintaining offices and conducting business in the state of Florida.

7. Defendant employs or has employed members of the International Union of Bricklayers and Allied Craftsmen and its affiliated local unions ("Union").

### Violation Charged

8. General Caulking acting through its authorized agent or officer, executed collective bargaining agreements with the Union. These collective bargaining agreements are annexed hereto as Exhibit A and Exhibit B and are hereinafter referred to as the "Agreements."

9. Pursuant to the Agreements, Defendant agreed to make certain payments to the IPF and IMI on behalf of covered employees of Defendant.

10. Having submitted some contributions, Defendant has demonstrated an awareness of the obligation to make those payments.

11. Upon information and belief, Defendant has failed to properly submit required reports and contributions for hours worked pursuant to the Agreements.

4

DSMDB-2469868

12. Plaintiffs seek to conduct an audit of Defendant's books and records in order to determine any amounts which may be owed for work covered by the Agreements.

13. Under the terms of the Plan and Trust Agreements adopted by the IPF and IMI Board of Trustees, the CCU Procedures and Supreme Court precedent, Plaintiffs are entitled to conduct an audit of the books and records of Defendant to determine whether contributions have been made in compliance with Defendant's obligations.

14. Under the terms of the Plan and Trust Agreements adopted by the IPF and IMI Boards of Trustees, and ERISA, Plaintiffs are entitled to recover any delinquent contributions found due by the audit, as well as interest, calculated at 15 percent per annum, and the greater of either liquidated damages, calculated at 20 percent, or an additional computation of interest, calculated at 15 percent on the aforementioned delinquent contributions.

15. Despite several requests by the IPF or a representative of the IPF for access to Defendant's books and records so that the IPF auditor can determine whether contributions have been made in compliance with Defendant's obligations, Defendant has failed to grant the IPF auditor such access to their books and records.

16. Plaintiffs have brought this action in faithful performance of the fiduciary duties imposed upon them under Section 404(a)(1) of ERISA, 29 U.S.C. § 1104(a)(1). Plaintiffs have been, and are, incurring additional attorney's fees as a direct result of

DSMDB-2469868

Defendant's failure to make contributions in accordance with the terms and conditions of the Agreement.

WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:

1. For an order directing Defendant General Caulking to turn over to Plaintiffs' auditor its books and records for the time period January 2005 through December 2007, including, but not limited to, payroll records and the general ledger(s). Plaintiffs will suffer irreparable injury in the absence of such injunctive relief and there is no adequate remedy at law. Plaintiffs seek an order granting them:

    a. Preliminary injunctive relief, and

    b. Permanent injunctive relief.

2. For any amounts determined owed the IPF and IMI by Defendant, which are not yet ascertainable until an audit is conducted.

3. for the costs of filing this action in the amount of $350.00 (ERISA Section 502(g)(2)(D), 29 U.S.C. § 1132(g)(2)(D));

4. In the amount of Five Thousand Dollars ($5,000.00), and such additional amounts as may be incurred, representing attorney's fees and costs of this action (ERISA Section 502(g)(2)(D), 29 U.S.C. § 1132(g)(2)(D)).

5. That Defendant be directed to comply with its obligations to correctly report and to contribute to the IPF and IMI all additional reports and contributions due and owing, and to pay the costs and disbursements of this action.

DSMDB-2469868

6.  Such other relief as this Court deems appropriate, including judgment for any contributions and/or interest thereon that may accrue subsequent to the filing of this complaint, as well as any resulting statutory damages thereon under ERISA.

Dated: July 25, 2008

By: _____

Ira R. Mitzner, D.C. Bar #184564
Charles V. Mehler III, D.C. Bar #475909
DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, DC 20006
(202) 420-2200

Attorney for Plaintiffs

7

DSMDB-2469868

JS-44
(Rev.1/05 DC)

## CIVIL COVER SHEET

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| JOHN FLYNN, et al.   *n°°1* | GENERAL CAULKING & COATINGS CO., INC. |

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF **11001**
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Ira R. Mitzner (202) 420-2200
Dickstein Shapiro LLP
1825 Eye Street, NW
Washington, DC 20006

Case: 1:08-cv-01278
Assigned To : Roberts, Richard W.
Assign. Date : 7/25/2008
Description: Labor-ERISA

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ◉ 3 Federal Question (U.S. Government Not a Party)
- ○ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

| ○ A. Antitrust | ○ B. Personal Injury/ Malpractice | ○ C. Administrative Agency Review | ○ D. Temporary Restraining Order/Preliminary Injunction |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Medical Malpractice<br>☐ 365 Product Liability<br>☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act<br><br>**Social Security:**<br>☐ 861 HIA ((1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g)<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)<br>**Other Statutes**<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

| ○ E. General Civil (Other) | OR | ○ F. Pro Se General Civil |
|---|---|---|

| **Real Property** | **Bankruptcy** | **Forfeiture/Penalty** | |
|---|---|---|---|
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent, Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**Prisoner Petitions**<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition | ☐ 610 Agriculture<br>☐ 620 Other Food &Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 RR & Truck<br>☐ 650 Airline Regs<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other | ☐ 470 Racketeer Influenced & Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Satellite TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410 |
| **Personal Property**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | **Property Rights**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**Federal Tax Suits**<br>☐ 870 Taxes (US plaintiff or defendant)<br>☐ 871 IRS-Third Party 26 USC 7609 | **Other Statutes**<br>☐ 400 State Reapportionment<br>☐ 430 Banks & Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation | ☐ 900 Appeal of fee determination under equal access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act |

①

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| ⊗ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>⊗ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**

⊗ 1) Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**
29 USC 1132

| **VII. REQUESTED IN COMPLAINT** | CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23 | **DEMAND $** _____ Check YES only if demanded in complaint<br>**JURY DEMAND:**  YES ☐  NO ⊗ |
|---|---|---|

**VIII. RELATED CASE(S) IF ANY**    (See instruction)    YES ☐    NO ⊗    If yes, please complete related case form.

DATE  7/25/08    SIGNATURE OF ATTORNEY OF RECORD  _____

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

**EXHIBIT A**

FL 0234

**FL 0234**

BRICKLAYERS LOCAL 1 OF FLORIDA
ORLANDO JURISDICTION

COLLECTIVE BARGAINING AGREEMENT

BETWEEN

THE INTERNATIONAL UNION OF BRICKLAYERS
AND ALLIED CRAFTWORKERS

LOCAL 1, OF FLORIDA.
ORLANDO JURISDICTION

AND

GENERAL CAULKING & COATINGS CO., INC.
3000 W. STATE RD. 426
OVIEDO, FLORIDA.
32765

JULY 1, 2002  THROUGH JUNE 30, 2005



RECEIVED
JUL 8 2004
COLLECTIVE BARGAINING SERVICES

This is a copy printed from the IUBAC Document Management System.

# TABLE OF CONTENTS

| ARTICLE | DESCRIPTION | PAGE |
|---|---|---|
| 1 | BARGAINING RECOGNITION | 1 |
| 2 | SCOPE OF WORK | 1 |
| 3 | WORKING CONDITIONS | 1 |
| 4 | EMPLOYMENT PROCEDURE | 2 |
| 5 | COLLECT BARGAINING/FRINGE FUNDS | 3 |
| 6 | SAFETY/SANITATION | 4 |
| 7 | UNION RECOGNITION | 4-5 |
| 8 | LIMITATION TO OUTPUT | 5 |
| 9 | STRIKES AND LOCKOUTS | 5 |
| 10 | JURISDICTIONAL DISPUTES | 5-6 |
| 11 | WORK DAY-WORK WEEK | 6 |
| 12 | SHIFT WORK | 6 |
| 13 | BREAK TIME | 6 |
| 14 | CLEANUP TIME | 7 |
| 15 | SHOW UP TIME | 7 |
| 16 | OVERTIME | 7-8 |
| 17 | HOLIDAYS | 8 |
| 18 | BADGES/CHECKOUT BRASS | 8 |
| 19 | STEWARD | 8 |
| 20 | NO LOST TIME | 9 |
| 21 | SHELTER AND STORAGE | 9 |
| 22 | ICE WATER | 9 |
| 23 | TRAVEL-GEOGRAPHIC AREA | 9 |
| 24 | TOOLS | 9 |
| 25 | PREMIUM PAY | 10 |
| 26 | TRAVELING CONTRACTORS | 10 |
| 27 | EMPLOYER DESIGNATED REPRESENTATIVE | 10-11 |
| 28 | TERMINATION | 11 |
| 29 | CHECKOFF AND LOCAL DUES | 11-12 |
| 30 | GEOGRAPHICAL JURISDICTION | 12 |
| 31 | WAGES | 12-13 |
| 32 | SUBCONTRACTING | 13 |
| 33 | DURATION | 14 |
| 34 | CONSTRUCTION AGREEMENT | |
| 35 | ADDENDUM "A" | |
| 36 | REQUEST FOR MAN POWER-FORM | |

This is a copy printed from the IUBAC Document Management System.

1
### BARGAINING RECOGNITION

2
3     All terms and conditions as set forth in the Collective Bargai-
4 ning Agreement between the International Union of Bricklayers and
5 Allied Craftworkers, Local 1 of Florida and General Caulking & Coat-
6 ings Co., Inc. are hereby agreed to for the period July, 1 2002
7 through June 30, 2005.

8
### ARTICLE 2
### SCOPE OF WORK

9     This Agreement shall cover work within the jurisdiction of the
10 Union, as defined in Branches of the Trade, Code 1 of the Constitu-
11 tion, Rules of Order and Codes of the International Union of Bricklay-
12 ers and Allied Craftworkers which is incorporated herein by reference.
13 (Per Addendum "A" attached hereto.)
14     In addition, all other assignments mutually agreed upon between
15 the Employer and the Union on any other building products or systems
16 related to the scope and type of work covered by this Agreement which
17 may be developed in the future that are determined by these parties to
18 fall within the work jurisdiction of this Agreement.
19     In the event of territorial jurisdiction or work assignment
20 dispute with any other BAC Local Union, the matter shall be referred
21 to the International Union for binding resolution.

22
### ARTICLE 3
### WORKING CONDITIONS

24     All contractors signatory to this Bargaining Agreement shall
25 comply with the working code section of the bylaws of Local 1 of
26 Florida of the IUBAC, as approved by the International Union on
27 October 5, 1981. In case of conflict with the contract, the contract
28 shall supersede the bylaws.
29     Local 1 of Florida of the IUBAC will not furnish any men to any
30 employer who is not signatory to this Agreement. No piece work shall
31 be allowed by contractors of Local 1 of Florida of the IUBAC.

### Page 1 of 25

# ARTICLE 4

## EMPLOYMENT PROCEDURE

It is understood by the Local Union that the Contractor desires to maintain a permanent workforce of steady employees, including apprentices, hired with the expectation that they shall be employed by the Contractor on a continuous basis to the extent that work is available.

The parties agree that one important element for successful masonry projects is a good constructive working relationship between the contractor and the local Field Representative. The local Field Representative is recognized as the key individual to be contacted for a meeting with the Contractor before a project is started so that all potential labor or scheduling difficulties on a job can be resolved before work begins.

REFERRALS: The parties agree that the contractor will call the Local Union and afford them forty-eight (48) hours (Saturdays, Sundays, and Holidays excluded) in which to refer employees for employment. In the event that the referral facilities maintained by the Union are unable to fill a requisition of a contractor for employees within the forty-eight (48) hours, the Contractor may employ applicants directly at the job site. In such event, the Contractor will notify the Local Union of the names and dates of such hires. The Contractor may request and the Union will refer employees on a non-discriminatory basis.

In addition, the Union agrees that the Contractor shall be permitted to assign a reasonable number of key employees to each project, up to 20% of the work force.

APPRENTICES: In order to train sufficient skilled mechanics for the needs of the masonry industry, the necessity for employment of Apprentices and/or Apprentice Improvers is recognized and encouraged by both parties to this Agreement. The Employer agrees to hire an Apprentice , if available, from the Local Union.

Page 2 of 25

This is a copy printed from the IUBAC Document Management System.

1  **ARTICLE 5**

2  **COLLECTIVE BARGAINING AGREEMENT FRINGE BENEFITS FUNDS**

3      Each Contractor shall pay to the fringe benefits funds listed
4  below the rates provided for in this Collective Bargaining Agreement,
5  such contributions to be made no later than the 15th day of the month
6  following the month in which the hours were worked. Such payments may
7  be made in a single check and shall be accompanied by a written report
8  setting forth the name, social security number, gross wages, dues
9  check off, and the hours worked by each person covered by this
10  Agreement.

11          (1) Local 1 Health and Welfare fund
12          (2) Local 1 Pension Fund
13          (3) Bricklayers & Trowel Trades International Pension Fund
14          (4) Local 15 & 11 Annuity Pension Fund

15

16      Four (4) separate funds, to be known, respectively, as the Florida
17  Trowel Trades Employees Health and Welfare Fund, Florida Trowel Trades
18  Pension Trust Fund, Bricklayers & Trowel Trades International Pension
19  Fund, and Local 15 & 11 Annuity Pension Fund for the purposes hereinaf-
20  ter set forth and to be financed by Employer contributions as hereinaf-
21  ter provided, are hereby established; these funds comporting to the
22  prescriptions of Section 302 (c) (5) of the National Labor Relations
23  Act, as amended.

24      In order to eliminate onerous book and record keeping burdens on
25  the Employer party hereto, said Employer shall make contributions to
26  each of the separate funds in a monthly payment in the amounts hereinaf-
27  ter provided and at the rates per hour hereinafter set forth for each
28  hour worked by each Apprentice, Improver, and Journeymen covered by this
29  Agreement, with a single payment, shall be delivered to such corporate
30  fiduciary as may be mutually agreed upon by the Contractor and the
31  Union.

32      Contributions shall be made for all hours worked, at the rates per
33  hour listed in this Article. Simultaneously with making said payment of

**Page 3 of 25**

This is a copy printed from the IUBAC Document Management System.

1  the contributions, each Employer shall also file, on forms furnished by
2  the fiduciary, a written report to the fiduciary, setting forth the
3  hours worked by each Apprentice, Improver, and Journeymen for whom
4  contributions shall have been made during said period. Upon receipt of
5  the Employer contributions, the fiduciary shall separate and allocate
6  them for the separate funds.
7       The Employer hereby irrevocably designates as its representatives
8  on the Board of Trustees such trustees as are now serving, or who will
9  in the future serve, as Employer Trustees, together with their succes-
10 sors.  The Employer further agrees to be bound by all actions taken by
11 the Trustees pursuant to the said Agreements and Declaration of Trust.
12      Notwithstanding any other provisions of this Agreement, the
13 obligation to make fringe benefit fund contributions at the rates set
14 forth herein and under the terms and conditions set forth herein shall
15 continue beyond any expiration date of this Agreement until the
16 contractor executes or becomes bound by a successor Collective Bargain-
17 ing Agreement or notifies the Trustees, in writing, that it has
18 bargained with the Union for a successor Agreement and that an impasse
19 in such bargaining has been reached and notifies the trustees the
20 specific date that such impasse was reached.
21
22                         **ARTICLE 6**
23                    **SAFETY AND SANITATION**
24      Contractors agree to comply with the regulations set forth by the
25 Occupational Safety and Health Act.
26                         **ARTICLE 7**
27                    **UNION RECOGNITION**
28      The Employer hereby recognizes and acknowledges that the Union is
29 the exclusive representative of all of its employees in the classifica-
30 tions of work falling within the jurisdiction of the Union, as defined
31 in this Agreement, and in the Constitution, Rules of Order and Codes of
32 the International Union of Bricklayers and Allied Craftworkers, for the
33 purpose of collective bargaining as provided for in the Labor Management
34 Relations Act of 1947, as amended.

                         **Page 4 of 25**

This is a copy printed from the IUBAC Document Management System.

1
2

## ARTICLE 8

### LIMITATION TO OUTPUT

3   It is agreed that there shall be no limitation placed on the output
4   of the individual worker.  There shall be no prohibition against the use
5   of labor-saving tools, machinery, equipment or devices provided the same
6   are in good operating condition and their use does not constitute a
7   hazard to life, limb, or health.  If any question arises as to the
8   condition of such tools, machinery, equipment, or devices, the decision
9   of any safety engineer or inspector with OSHA division shall be binding.

10
### ARTICLE 9

11
### STRIKES AND LOCKOUTS

12   There will be no strikes, sit-downs, or lockouts while this
13   Agreement is in effect except for failure of either party to comply with
14   this Agreement.  However, the contractor recognizes the right of the
15   Unions and their members to honor such picket lines as may be legally
16   established by other unions and authorized by the Building Trades
17   Council.

18   This Article shall not apply in those cases where an employer fails
19   or refuses to make, in whole or in part, any payments required under
20   this Agreement including all wages, local Union fringe benefits, or
21   other contributions that have been established through bona fide
22   collective bargaining.

23
### ARTICLE 10

24
### JURISDICTIONAL DISPUTES

25   In the event a jurisdictional dispute develops on the job and
26   cannot be settled locally, then the International representatives, of
27   the Union involved, will be invited in to settle the issue.

28
### ARTICLE 11

29
### WORK DAY-WORK WEEK

30   A work day shall consist of eight (8) hours between the hours of
31   7:00 a.m. and 5:00 p.m..  However, by mutual consent of the contractor

**Page 5 of 25**

1 and the Field Representative of the Union, the starting time may be
2 changed.

3    The normal work week shall consist of five (5) days of eight (8)
4 hours each, Monday through Friday; and a regular schedule of working
5 hours shall be established between the hours of 7:00 a.m. and 3:30 p.m.
6 with a suitable time for unpaid lunch; provided, however, that by mutual
7 consent, these hours may be modified to any daylight hours when working
8 conditions are more favorable to the health and safety of the workers
9 and the progress of the job.

10                    **ARTICLE 12**
11                    **SHIFT WORK**
12    Shift work may be performed at the option of the Contractor.
13 However, when shift work is performed, it must continue for a period of
14 not less than five (5) consecutive days. On any shift week, the last two
15 (2) days of the week shall be paid at the appropriate overtime rate.
16 Compensation for employees on any shift, worked out side of the first
17 shift, shall be paid a shift premium equal to time and one half of the
18 base wages for all hours worked .If any other craft on the job site has
19 a better provision in their contract, this local has the option to adopt
20 it.

21                    **ARTICLE 13**
22                    **BREAK TIME**
23    Break to be allowed once in mid-morning at work station and not to
24 exceed ten (10) minutes. When working ten(10) hour shifts, a mid after-
25 noon break shall be ten (10) minutes.

26
27                    **ARTICLE 14**
28                    **CLEANUP TIME**
29    Immediately prior to quitting time, ten (10) minutes will be
30 allowed for cleanup of tools and change clothes.  No worker will leave
31 the job until quitting time.


                    **Page 6 of 25**


This is a copy printed from the IUBAC Document Management System.

## ARTICLE 15

### SHOW UP TIME

Two (2) hours show up time to be paid to all journeymen and apprentices if no work is provided, except when prior notice has been given. A member (journeyman or apprentice), once starting work after two (2) hours, shall be paid for a regular eight (8) hour day, excluding inclement weather, in which case payment shall be for actual hours worked.

In order to qualify for the pay provided for in this Article, the employee must remain on the job available for work during the period of time for which he receives pay unless released sooner by the Contractor. Employee must phone in to supervisor. The employer shall have sole responsibility to determine availability to work due to weather conditions.

## ARTICLE 16

### OVERTIME

All work after forty (40) hours shall be paid at time and one-half (1 ½) the basic hourly rate of pay.

All work on holidays shall be paid for at time and one half (1 ½) the basic rate of pay.

An employee once starting an overtime rate will remain at the overtime rate until he has eight (8) hours off.

When craftsmen are required to work more than twelve (12) hours, the employer shall furnish a suitable meal after the twelfth (12th) hour and a reasonable time for eating same, not to exceed twenty (20) minutes. When required to work additional overtime hours beyond the twelfth (12th) hour, the employer shall furnish a suitable meal every five (5) hours thereafter and a reasonable time for eating same, not to exceed twenty (20) minutes. This provision shall effect unscheduled or emergency work only. On scheduled overtime work, the craftsman will make provision for his first meal and shall be given a reasonable time for eating same, not to exceed twenty (20) minutes. Additional meals shall be furnished by the contractor.

**Page 7 of 25**

## ARTICLE 17

### HOLIDAYS

1. New Year's Day
2. Memorial Day
3. Independence Day
4. Labor Day
5. Thanksgiving Day
6. Christmas Day

No work will be performed on these days except to save life or property.  Any work performed on any holiday shall be paid for at the rate of time and one half.

When a holiday falls on Saturday, the preceding Friday will be observed.  When a holiday falls on Sunday, the Monday following will be observed, only when recognized by National authorities.

## ARTICLE 18

### BADGES/CHECKOUT BRASS

All jobs requiring badges and/or checkout brass, the same shall be picked up prior to starting time and turned in to the field office on contractor's time.

## ARTICLE 19

### STEWARD

The contractor shall hire a steward appointed by the Field Representative for each job site. The steward shall be a working employee and shall, when appropriate, be granted reasonable time to conduct union business. He shall must notify his Foreman.

The Steward shall not be asked to pay off or inform an individual of his pending layoff. The Steward shall not be transferred from one job to another as long as there is work being performed on said job site.

## ARTICLE 20

### NO LOST TIME

There shall be no time lost by an employee while moving from job to job or waiting for scaffold building.  Scaffolding must comply with OSHA (Occupational Safety and Health Act).

**Page 8 of 25**

## ARTICLE 21

### SHELTER AND STORAGE

A suitable and clean enclosed shelter and storage space WITH LOCK, exclusively for tools, shall be provided by the employer for the use of the employees.

## ARTICLE 22

### ICE WATER

Ice water to be provided by the contractor either by drinking fountain or cups, if fountain is not available on job.

## ARTICLE 23

### TRAVEL-GEOGRAPHIC AREA

Travel time pay to be negotiated between the contractor and the employee when work to be performed is outside the Orlando jurisdiction of the Orlando office: Brevard, Flagler, Lake, Marion, Orange, Osceola, Seminole, Sumpter, and Volusia Counties.

## ARTICLE 24

### TOOLS

All employees shall be required to furnish the hand tools necessary to perform their work. Employees shall be allowed ten (10) minutes to pick up tools prior to quitting time.

## ARTICLE 25

### PREMIUM PAY

Foremen's wages shall be 75¢ an hour over journeyman's rate. The foreman shall be a qualified mechanic in the trade he is overseeing.

Employees working on all swinging scaffolds or suspended scaffold not anchored to the ground shall be paid seventy-five cents above the journeyman's rate.

Page 9 of 25

This is a copy printed from the IUBAC Document Management System.

## ARTICLE 26

### TRAVELING CONTRACTORS

When the Employer has any work specified in this Agreement to be performed outside the area covered by this Agreement and within the area covered by an agreement with another affiliate of the International Union of Bricklayers and Allied Craftsmen, the Employer agrees to abide by the full terms and conditions of the Agreement in effect in the job site area. Employees covered by this Agreement who are sent to projects outside the area covered by this Agreement, shall be paid at least the established minimum wage scale specified in this Agreement but in no case less than the established minimum wage scale of the local Agreement covering the territory in which such work is being performed plus all contributions specified in the job site local Agreement. The Employer shall, in all other matters, be governed by the provisions established in the job site local Agreement. If employees are sent to work on a project in an area where there is no local Agreement covering the work specified in this Agreement, the full terms and conditions of this Agreement shall apply.

## ARTICLE 27

### EMPLOYER DESIGNATED REPRESENTATIVE

The Employer designated representative is a General Caulking & Coatings Officer only, and no notice is needed at termination date of contract for re-negotiation.

## ARTICLE 28

### TERMINATION

Employees terminated by discharge or reduction in force shall be paid, at the time of termination, all wages due them; but any employee who quits will be paid at the next regular pay day and shall receive pay for hours worked only.

Any employee being terminated shall be notified of termination in sufficient time to have one-half (½) hour's notice to collect, clean,

**Page 10 of 25**

1  and pack his tools; and, if such notice is not given, shall be paid for
2  that portion of the hour for which he was not notified.
3      The employer reserves the right to require and receive, when a
4  journeyman or apprentice is discharged or laid off, and before making
5  any payment due, any and all property belonging to the employer that is
6  in the possession of the employee.
7      Any employee discharged for stealing, insubordination, inefficien-
8  cy, failure to perform work as instructed by the foreman, intoxication,
9  not using latrines, fighting, possession or use of narcotics, possession
10  of a deadly weapon, or not abiding by safety rules and regulations,
11  shall be paid for hours worked only.
12      The employer shall notify the job steward of all terminations of
13  employees covered by this Agreement.
14      The parties further agree that when the project nears completion or
15  encounters interruptions in employment, layoffs shall be at the
16  employer's discretion.
17
18                          **ARTICLE 29**
19                    **CHECKOFF AND LOCAL DUES**
20      The Employer shall deduct from the wages of each employee who has
21  signed a check-off authorization form conforming to federal law, and
22  transmit monthly to the applicable Local Union (or to any agencies
23  designated by said Union for the collection of such money), the sum for
24  which the Local Union has specified, or specifies from time to time and
25  so advises the Employer in writing, as the portion of said employee's
26  union dues to said Union, to its International Union, or to any other
27  affiliate of the International Union, subject to checkoff.  The sums
28  transmitted shall be accompanied by a statement, in a form specified by
29  the Union, reporting the name of each person whose dues are being paid
30  on gross payroll.  Local dues checkoff is three percent (3%) of gross
31  wages.
32

                          **Page 11 of 25**

This is a copy printed from the IUBAC Document Management System.

## APPRENTICE-IMPROVER-RATES;

The rate for Apprentices and Improvers, shall be as follows, based on the current Journeyman's rate plus

## ALL FRINGE BENEFITS as stated.

| | | |
|---|---|---|
| First Year: | 1st. 6 months | 60% |
| | 2nd. 6 months | 65% |
| Second Year: | 1st. 6 months | 70% |
| | 2nd. 6 months | 80% |
| Third Year: | 1st. 6 months | 90% |
| | 2nd. 6 months | 95% |

## ARTICLE 32
## SUBCONTRACTING

The Employer agrees not to sublet, assign or transfer any work covered by this Agreement to be performed at the site of a construction or maintenance project to any person, firm or corporation, except where the subcontractor subscribes and agrees in writing to be bound by the full terms of this Agreement and complies with all of the terms and conditions of this Agreement.

All charges of violations of this Article shall be considered as a dispute and shall be processed in accordance with the provisions of this Agreement covering the procedure for the handling or disputes and the final and binding arbitration of disputes.

## ARTICLE 33

## DURATION

This Agreement shall become effective the first full payroll period commencing on or after July 1, 2002. and continue in full force and effect until June 30, 2005 the anniversary date, and for successive one year periods thereafter until terminated or modified by either party. IN WITNESS WHEREOF, the parties hereto have executed this Agreement.

GENERAL CAULING & COATINGS, INC.
3000 W. STATE ROAD 42
OVIEDO, FL  32765

6/17/02
Date

INTERNATIONAL UNION OF BRICKLAYERS AND ALLIED CRAFTWORKERS, LOCAL #1 OF FLORIDA ORLANDO JURISDICTION.

Keith Brault
Field Representative

6/17/02
Date

# CONSTRUCTION AGREEMENT

## LOCAL 1 OF FLORIDA, ORLANDO JURISDICTION
## INTERNATIONAL UNION OF BRICKLAYERS AND ALLIED CRAFTSMEN

This will acknowledge that the undersigned, acting for and on behalf of GENERAL CAULKING & COATINGS COMPANY, INC., OVIEDO, FL., hereby accepts, adopts, and agrees to be bound by each and every term and provision, including those which create and require contributions to the Florida Trowel Trades Employees Health and Welfare Fund, and Local 15 & 11 Annuity Pension Fund for the benefit of employees and their dependents, all contained in this Collective Bargaining Agreement made and entered into on July 1, 2001, at Orlando, Orange County, Florida, of the International Union of Bricklayers and Allied Craftworkers and the General Caulking & Coating Company, Inc., Orlando office.

By the executive of this undertaking, the undersigned expressly acknowledges that he has received and examined a true and exact copy of the aforementioned Collective Bargaining Agreement. In addition, the undersigned employer adopts and accepts as his representatives in the administration of the aforementioned Health and Welfare, Pension, International Pension, and Annuity Pension, those trustees who are acting as employer trustees and each and every term and provision of the Trust Instrument pursuant to which said funds are administered.

The aforementioned Collective Bargaining Agreement and Addendum "A", as amended, shall be in full force and effect through June 30, 2005

Accepted for Company:                    Workers' Compensation Insurance
~~Carrier~~

George Kanistras
Please Print Name                        ___

(signature)
Signature of Employer Above              ___

3004 Kananwood Ct. Suite 140     Accepted for Local #1 of Florida:
Oviedo, FL
Local Address                            Keith Brault, Field Representative

407-365-4923
Local Phone Number                       Date   6/17/02

Copy:  Contractor          General Caulking & Coatings Co., Inc., Oviedo
       Union              IUBAC, Local 1 of Florida, Orlando Jurisdiction
       Administrator      Administrative Services, Inc., Orlando

## ARTICLE 30

## GEOGRAPHICAL JURISDICTION

The following areas are covered by this Agreement: Sumter, Marion, Flagler, Volusia, Brevard, Lake, Orange, Osceola and Seminole Counties, and any other job under contract out of the Orlando office only.

## ARTICLE 31

## WAGES

Payment of wages shall be weekly and during working hours, normally on Friday but, in any event, not later than three (3) days after the close of the payroll period. However, by mutual consent between the Employer and the Union, this time may be modified. Payment shall be in currency or company check with a statement of wages, hours worked, rate of pay, and itemized deductions attached. Furthermore, all employees shall be paid at the job site. This check will be drawn on a bank which is chartered by the State of Florida. If a check shall have been returned by a bank because of insufficient or uncollected funds, then at the option of the Union, payment by that company shall thereafter be made in cash. Any employee forced to wait beyond the normal working hours for his pay shall be paid waiting time at the straight time rate.

Hourly wage rate, number of hours worked, and dates of pay period must be on check or payroll envelope.

Wages due shall be paid to all employees weekly and not later than three (3) working days following the week in which earned.

The first payroll period on or after the following dates:

| Journeyman | 7/1/02 | 7/1/03 | 7/1/04 |
|---|---|---|---|
| Wages | 16.40 | 16.80 | 17.20 |
| Health and Welfare | 2.25 | 2.75 | 3.00 |
| Local Pension | .65 | .65 | .75 |
| International Pension | .35 | .35 | .35 |
| Local Annuity | .95 | .95 | 1.15 |
| Total Package | 20.60 | 21.50 | 22.45 |

Foreman: .75¢ an hour over Journeyman scale

Page 12 of 25

This is a copy printed from the IUBAC Document Management System.

1                          ADDENDUM "A"

2        In consideration of the conditions contained herein and in the
3   Working Agreement referred to hereafter, and other good and valuable
4   consideration, receipt of which is hereby acknowledged, General Caulking
5   & Coatings Co., Inc. (hereafter, "Employer) and the International Union
6   of Bricklayers & Allied Craftworkers, Local 1 of Florida (hereafter,
7   "Union") enter into this Addendum modifying the terms and conditions of
8   the Union's 2002--2005 Working Agreement (hereafter, "Working Agree-
9   ment"), a copy of which is attached hereto:

10       1.   Except as modified herein, the wages, hours and terms and
11  conditions of employment of the Working Agreement shall be in full force
12  and effect as to the Employer and Union.

13       2.   The trade jurisdiction of the Working Agreement and this
14  Addendum shall not include the installation of paint products, damp-
15  proofing, membrane waterproofing, or applications or installations not
16  pertaining directly to caulking and sealants or masonry work.

17       3.  The Union acknowledges that the employees it represents will be
18  required to work on the installation of materials with other employees
19  working outside the trade jurisdiction of the Working Agreement and this
20  Addendum.  At no time will the Union strike, picket or disrupt any work
21  activities of the Employer for the duration of this Addendum.

22       4.   At no time will the Employer be responsible to make fringe
23  benefit contributions on behalf of individuals working outside the trade
24  jurisdiction of the Working Agreement as modified by this Addendum, and
25  neither the Union nor the pertinent employee benefit funds will have any
26  right to audit the Employer's payroll records as to such employees.

27       5.  It will be the Union's sole responsibility to keep the Employer
28  aware of all employees it claims are covered by the trade jurisdiction
29  of this Addendum.

30       6.  The Union agrees not to solicit employees of the Employer
31  (other than those performing work covered by the trade jurisdiction of
32  this Addendum) to join the Union or otherwise participate in activities
33  of the Union.

This is a copy printed from the IUBAC Document Management System.

1        **7.**   **This Agreement will apply to only the General Caulking &**

2  **Coatings Co., Inc. office located at 3000 West State Road 426, Oviedo,**

3  **Florida 32765**

4       **8. This Addendum and the Working Agreement it modifies shall be in**

5  **full force and effect beginning July 1, 2002  and terminating June 30,**

6   **2005**

7

8  **In witness whereof, the Union and the Employer by their authorized**

9  **representatives have set their hands and dates below set forth.**

10  **ACKNOWLEDGED AND ACCEPTED:**

11  **INTERNATIONAL UNION OF BRICKLAYERS**       **GENERAL CAULKING & COATINGS**

12  **& ALLIED CRAFTWORKERS, LOCAL 1 OF**     **COMPANY, INC.**

13  **FLORIDA, ORLANDO JURISDICTION**

14

15  **Title:** _____          **Title:** _____

16  **Date:** _____           **Date:** _____

This is a copy printed from the IUBAC Document Management System.

# REQUEST FOR MAN POWER
From Bricklayers  Local  # 1-Orlando-407-841-6710-fax

Company Name– __

Phone Number–_____                              __
Fax Number– _____                             __

Date of Request – __                             __
From– _____                              __

Number of Employees–
Report date –_____                          __

Report Time–_____                           __
Work site –_____                            __

List by Craft Number of Employees needed-
(Brick & Block Layers-Tile Setters &  Finishers- Cement
Masons-Plasterers- Stone &  Marble Masons- Artisans-
Caulkers- Fiberglass Mechanics-Terrazzo Workers &
Finishers.)

_____                   _____

_____                   _____

_____                   _____

_____                   _____

_____                   _____

_____
Possible Length of Employment-                   _____

This is a copy printed from the IUBAC Document Management System.

**EXHIBIT B**

FL 0534

<u>BRICKLAYERS LOCAL 1 OF FLORIDA
ORLANDO JURISDICTION</u>

COLLECTIVE BARGAINING AGREEMENT

BETWEEN

THE INTERNATIONAL UNION OF BRICKLAYERS
AND ALLIED CRAFTWORKERS

LOCAL 1, OF FLORIDA.
ORLANDO JURISDICTION

AND

GENERAL CAULKING & COATINGS CO., INC.
3000 W. STATE RD. 426
OVIEDO, FLORIDA.
32765

JULY 1, 2005.  THROUGH JUNE 30, 2008



RECEIVED

AUG 10 2005

COLLECTIVE BARGAINING
SERVICES

This is a copy printed from the IUBAC Document Management System.

## TABLE OF CONTENTS

| ARTICLE | DESCRIPTION | PAGE |
|---|---|---|
| 1 | BARGAINING RECOGNITION | 1 |
| 2 | SCOPE OF WORK | 1 |
| 3 | WORKING CONDITIONS | 1 |
| 4 | EMPLOYMENT PROCEDURE | 2 |
| 5 | COLLECT BARGAINING/FRINGE FUNDS | 3 |
| 6 | SAFETY/SANITATION | 4 |
| 7 | UNION RECOGNITION | 4-5 |
| 8 | LIMITATION TO OUTPUT | 5 |
| 9 | STRIKES AND LOCKOUTS | 5 |
| 10 | JURISDICTIONAL DISPUTES | 5-6 |
| 11 | WORK DAY-WORK WEEK | 6 |
| 12 | SHIFT WORK | 6 |
| 13 | BREAK TIME | 6 |
| 14 | CLEANUP TIME | 7 |
| 15 | SHOW UP TIME | 7 |
| 16 | OVERTIME | 7-8 |
| 17 | HOLIDAYS | 8 |
| 18 | BADGES/CHECKOUT BRASS | 8 |
| 19 | STEWARD | 8 |
| 20 | NO LOST TIME | 9 |
| 21 | SHELTER AND STORAGE | 9 |
| 22 | ICE WATER | 9 |
| 23 | TRAVEL-GEOGRAPHIC AREA | 9 |
| 24 | TOOLS | 9 |
| 25 | PREMIUM PAY | 10 |
| 26 | TRAVELING CONTRACTORS | 10 |
| 27 | EMPLOYER DESIGNATED REPRESENTATIVE | 10-11 |
| 28 | TERMINATION | 11 |
| 29 | CHECKOFF AND LOCAL DUES | 11-12 |
| 30 | GEOGRAPHICAL JURISDICTION | 12 |
| 31 | WAGES | 12-13 |
| 32 | SUBCONTRACTING | 13 |
| 33 | DURATION | 14 |
| 34 | CONSTRUCTION AGREEMENT | |
| 35 | ADDENDUM "A" | |
| 36 | REQUEST FOR MAN POWER-FORM | |

This is a copy printed from the IUBAC Document Management System.

FL 0534

## BARGAINING RECOGNITION

All terms and conditions as set forth in the Collective Bargaining Agreement between the International Union of Bricklayers and Allied Craftworkers, Local 1 of Florida and General Caulking & Coatings Co., Inc. are hereby agreed to for the period July,1 2005 through June 30, 2008

## ARTICLE 2

### SCOPE OF WORK

This Agreement shall cover work within the jurisdiction of the Union, as defined in Branches of the Trade, Code 1 of the Constitution, Rules of Order and Codes of the International Union of Bricklayers and Allied Craftworkers which is incorporated herein by reference. (Per Addendum "A" attached hereto.)

In addition, all other assignments mutually agreed upon between the Employer and the Union on any other building products or systems related to the scope and type of work covered by this Agreement which may be developed in the future that are determined by these parties to fall within the work jurisdiction of this Agreement.

In the event of territorial jurisdiction or work assignment dispute with any other BAC Local Union, the matter shall be referred to the International Union for binding resolution.

## ARTICLE 3

### WORKING CONDITIONS

All contractors signatory to this Bargaining Agreement shall comply with the working code section of the bylaws of Local 1 of Florida of the IUBAC, as approved by the International Union on October 5, 1981. In case of conflict with the contract, the contract shall supersede the bylaws.

Local 1 of Florida of the IUBAC will not furnish any men to any employer who is not signatory to this Agreement. No piece work shall be allowed by contractors of Local 1 of Florida of the IUBAC.

Page 1 of 25

## ARTICLE 4

### EMPLOYMENT PROCEDURE

It is understood by the Local Union that the Contractor desires to maintain a permanent workforce of steady employees, including apprentices, hired with the expectation that they shall be employed by the Contractor on a continuous basis to the extent that work is available.

The parties agree that one important element for successful masonry projects is a good constructive working relationship between the contractor and the local Field Representative. The local Field Representative is recognized as the key individual to be contacted for a meeting with the Contractor before a project is started so that all potential labor or scheduling difficulties on a job can be resolved before work begins.

REFERRALS: The parties agree that the contractor will call the Local Union and afford them forty-eight (48) hours (Saturdays, Sundays, and Holidays excluded) in which to refer employees for employment. In the event that the referral facilities maintained by the Union are unable to fill a requisition of a contractor for employees within the forty-eight (48) hours, the Contractor may employ applicants directly at the job site. In such event, the Contractor will notify the Local Union of the names and dates of such hires. The Contractor may request and the Union will refer employees on a non-discriminatory basis.

In addition, the Union agrees that the Contractor shall be permitted to assign a reasonable number of key employees to each project, up to 20% of the work force.

APPRENTICES: In order to train sufficient skilled mechanics for the needs of the masonry industry, the necessity for employment of Apprentices and/or Apprentice Improvers is recognized and encouraged by both parties to this Agreement. The Employer agrees to hire an Apprentice , if available, from the Local Union.

**Page 2 of 25**

This is a copy printed from the IUBAC Document Management System.

1                          **ARTICLE 5**
2        **COLLECTIVE BARGAINING AGREEMENT FRINGE BENEFITS FUNDS**
3            Each Contractor shall pay to the fringe benefits funds listed
4       below the rates provided for in this Collective Bargaining Agreement,
5       such contributions to be made no later than the 15th day of the month
6       following the month in which the hours were worked. Such payments may
7       be made in a single check and shall be accompanied by a written report
8       setting forth the name, social security number, gross wages, dues
9       check off, and the hours worked by each person covered by this
10      Agreement.
11                    (1) Local 1 Health and Welfare fund
12                    (2) Local 1 Pension Fund
13                    (3) Bricklayers & Trowel Trades International Pension Fund
14                    (4) Local 15 & 11 Annuity Pension Fund
15
16          Four (4) separate funds, to be known, respectively, as the Florida
17      Trowel Trades Employees Health and Welfare Fund, Florida Trowel Trades
18      Pension Trust Fund, Bricklayers & Trowel Trades International Pension
19      Fund, and Local 15 & 11 Annuity Pension Fund for the purposes hereinaf-
20      ter set forth and to be financed by Employer contributions as hereinaf-
21      ter provided, are hereby established; these funds comporting to the
22      prescriptions of Section 302 (c) (5) of the National Labor Relations
23      Act, as amended.
24          In order to eliminate onerous book and record keeping burdens on
25      the Employer party hereto, said Employer shall make contributions to
26      each of the separate funds in a monthly payment in the amounts hereinaf-
27      ter provided and at the rates per hour hereinafter set forth for each
28      hour worked by each Apprentice, Improver, and Journeymen covered by this
29      Agreement, with a single payment, shall be delivered to such corporate
30      fiduciary as may be mutually agreed upon by the Contractor and the
31      Union.
2           Contributions shall be made for all hours worked, at the rates per
3       hour listed in this Article. Simultaneously with making said payment of

                              **Page 3 of 25**

This is a copy printed from the IUBAC Document Management System.

AUG-10-05 THU 07:21 AM BAC.LOCAL.1.FL                305 979 884   **FL  0534**

1    the contributions, each Employer shall also file, on forms furnished by
2    the fiduciary, a written report to the fiduciary, setting forth the
3    hours worked by each Apprentice, Improver, and Journeymen for whom
4    contributions shall have been made during said period. Upon receipt of
5    the Employer contributions, the fiduciary shall separate and allocate
6    them for the separate funds.
7         The Employer hereby irrevocably designates as its representatives
8    on the Board of Trustees such trustees as are now serving, or who will
9    in the future serve, as Employer Trustees, together with their succes-
.0   sors.  The Employer further agrees to be bound by all actions taken by
1    the Trustees pursuant to the said Agreements and Declaration of Trust.
2         Notwithstanding any other provisions of this Agreement, the
3    obligation to make fringe benefit fund contributions at the rates set
4    forth herein and under the terms and conditions set forth herein shall
5    continue beyond any expiration date of this Agreement until the
6    contractor executes or becomes bound by a successor Collective Bargain-
7    ing Agreement or notifies the Trustees, in writing, that it has
8    bargained with the Union for a successor Agreement and that an impasse
9    in such bargaining has been reached and notifies the trustees the
0    specific date that such impasse was reached.
1
2                          ARTICLE 6
3                     SAFETY AND SANITATION
         Contractors agree to comply with the regulations set forth by the
Occupational Safety and Health Act.
                            ARTICLE 7
                       UNION RECOGNITION
         The Employer hereby recognizes and acknowledges that the Union is
the exclusive representative of all of its employees in the classifica-
tions of work falling within the jurisdiction of the Union, as defined
in this Agreement, and in the Constitution, Rules of Order and Codes of
the International Union of Bricklayers and Allied Craftworkers, for the
purpose of collective bargaining as provided for in the Labor Management
Relations Act of 1947, as amended.

                        **Page 4 of 25**

This is a copy printed from the IUBAC Document Management System.

AUG-10-05 THU 07:22 AM BAC.LOCAL.1.FL           305 979 8841        P.08

**FL 0534**

## ARTICLE 8

### LIMITATION TO OUTPUT

It is agreed that there shall be no limitation placed on the output of the individual worker.  There shall be no prohibition against the use of labor-saving tools, machinery, equipment or devices provided the same are in good operating condition and their use does not constitute a hazard to life, limb, or health.  If any question arises as to the condition of such tools, machinery, equipment, or devices, the decision of any safety engineer or inspector with OSHA division shall be binding.

## ARTICLE 9

### STRIKES AND LOCKOUTS

There will be no strikes, sit-downs, or lockouts while this Agreement is in effect except for failure of either party to comply with this Agreement.  However, the contractor recognizes the right of the Unions and their members to honor such picket lines as may be legally established by other unions and authorized by the Building Trades Council.

This Article shall not apply in those cases where an employer fails or refuses to make, in whole or in part, any payments required under this Agreement including all wages, local Union fringe benefits, or other contributions that have been established through bona fide collective bargaining.

## ARTICLE 10

### JURISDICTIONAL DISPUTES

In the event a jurisdictional dispute develops on the job and cannot be settled locally, then the International representatives, of the Union involved, will be invited in to settle the issue.

## ARTICLE 11

### WORK DAY-WORK WEEK

A work day shall consist of eight (8) hours between the hours of 7:00 a.m. and 5:00 p.m..  However, by mutual consent of the contractor

This is a copy printed from the IUBAC Document Management System.

AUG-10-05 THU 07:22 AM BAC.LOCAL.1.FL          305 979 88       FL 0534

1  and the Field Representative of the Union, the starting time may be
2  changed.

3      The normal work week shall consist of five (5) days of eight (8)
4  hours each, Monday through Friday; and a regular schedule of working
5  hours shall be established between the hours of 7:00 a.m. and 3:30 p.m.
6  with a suitable time for unpaid lunch; provided, however, that by mutual
7  consent, these hours may be modified to any daylight hours when working
8  conditions are more favorable to the health and safety of the workers
9  and the progress of the job.

## ARTICLE 12
### SHIFT WORK

Shift work may be performed at the option of the Contractor.
However, when shift work is performed, it must continue for a period of
not less than five (5) consecutive days. On any shift week, the last two
(2) days of the week shall be paid at the appropriate overtime rate.
Compensation for employees on any shift, worked out side of the first
shift, shall be paid a shift premium equal to time and one half of the
base wages for all hours worked .If any other craft on the job site has
a better provision in their contract, this local has the option to adopt
it.

## ARTICLE 13
### BREAK TIME

Break to be allowed once in mid-morning at work station and not to
exceed ten (10) minutes. When working ten(10) hour shifts, a mid after-
noon break shall be ten (10) minutes.

## ARTICLE 14
### CLEANUP TIME

Immediately prior to quitting time, ten (10) minutes will be
allowed for cleanup of tools and change clothes.  No worker will leave
the job until quitting time.

**Page 6 of 25**

This is a copy printed from the IUBAC Document Management System.

AUG-10-05 THU 07:23 AM BAC.LOCAL.1.FL            305 979 8841            P.10

FL 0534

## ARTICLE 15
### SHOW UP TIME

Two (2) hours show up time to be paid to all journeymen and apprentices if no work is provided, except when prior notice has been given. A member (journeyman or apprentice), once starting work after two (2) hours, shall be paid for a regular eight (8) hour day, excluding inclement weather, in which case payment shall be for actual hours worked.

In order to qualify for the pay provided for in this Article, the employee must remain on the job available for work during the period of time for which he receives pay unless released sooner by the Contractor. Employee must phone in to supervisor. The employer shall have sole responsibility to determine availability to work due to weather conditions.

## ARTICLE 16
### OVERTIME

All work after forty (40) hours shall be paid at time and one-half (1 ½) the basic hourly rate of pay.

All work on holidays shall be paid for at time and one half (1 ½ ) the basic rate of pay.

An employee once starting an overtime rate will remain at the overtime rate until he has eight (8) hours off.

When craftsmen are required to work more than twelve (12) hours, the employer shall furnish a suitable meal after the twelfth (12th) hour and a reasonable time for eating same, not to exceed twenty (20) minutes. When required to work additional overtime hours beyond the twelfth (12th) hour, the employer shall furnish a suitable meal every five (5) hours thereafter and a reasonable time for eating same, not to exceed twenty (20) minutes. This provision shall effect unscheduled or emergency work only. On scheduled overtime work, the craftsman will make provision for his first meal and shall be given a reasonable time for eating same, not to exceed twenty (20) minutes. Additional meals shall be furnished by the contractor.

**Page 7 of 25**

This is a copy printed from the IUBAC Document Management System.

AUG-10-05 THU 07:24 AM BAC.LOCAL.1.FL                    305 979 8841        P.11

FL 0534

## ARTICLE 17

### HOLIDAYS

1. New Year's Day
2. Memorial Day
3. Independence Day
4. Labor Day
5. Thanksgiving Day
6. Christmas Day

No work will be performed on these days except to save life or property. Any work performed on any holiday shall be paid for at the rate of time and one half.

When a holiday falls on Saturday, the preceding Friday will be observed. When a holiday falls on Sunday, the Monday following will be observed, only when recognized by National authorities.

## ARTICLE 18

### BADGES/CHECKOUT BRASS

All jobs requiring badges and/or checkout brass, the same shall be picked up prior to starting time and turned in to the field office on contractor's time.

## ARTICLE 19

### STEWARD

The contractor shall hire a steward appointed by the Field Representative for each job site. The steward shall be a working employee and shall, when appropriate, be granted reasonable time to conduct union business. He shall must notify his Foreman.

The Steward shall not be asked to pay off or inform an individual of his pending layoff. The Steward shall not be transferred from one job to another as long as there is work being performed on said job site.

## ARTICLE 20

### NO LOST TIME

There shall be no time lost by an employee while moving from job to job or waiting for scaffold building. Scaffolding must comply with OSHA (Occupational Safety and Health Act).

### Page 8 of 25

FL 0534

## ARTICLE 21
### SHELTER AND STORAGE

A suitable and clean enclosed shelter and storage space WITH LOCK, exclusively for tools, shall be provided by the employer for the use of the employees.

## ARTICLE 22
### ICE WATER

Ice water to be provided by the contractor either by drinking fountain or cups, if fountain is not available on job.

## ARTICLE 23
### TRAVEL-GEOGRAPHIC AREA

Travel time pay to be negotiated between the contractor and the employee when work to be performed is outside the Orlando jurisdiction of the Orlando office: Brevard, Flagler, Lake, Marion, Orange, Osceola, Seminole, Sumpter, and Volusia Counties.

## ARTICLE 24
### TOOLS

All employees shall be required to furnish the hand tools necessary to perform their work. Employees shall be allowed ten (10) minutes to pick up tools prior to quitting time.

## ARTICLE 25
### PREMIUM PAY

*for 3 or more men and otherwise .75¢/hr.*

Foremen's wages shall be $1.00an hour over journeyman's rate. The foreman shall be a qualified mechanic in the trade he is overseeing.

Employees working on all swinging scaffolds or suspended scaffold not anchored to the ground shall be paid seventy-five cents above the journeyman's rate.

Page 9 of 25

AUG-10-05 THU 07:25 AM BAC.LOCAL.1.FL                     305 979 8841          P.13

FL 0534

1                              **ARTICLE 26**

2                         **TRAVELING CONTRACTORS**

3        When the Employer has any work specified in this Agreement to be

4    performed outside the area covered by this Agreement and within the area

5    covered by an agreement with another affiliate of the International

6    Union of Bricklayers and Allied Craftsmen, the Employer agrees to abide

7    by the full terms and conditions of the Agreement in effect in the job

8    site area.  Employees covered by this Agreement who are sent to projects

9    outside the area covered by this Agreement, shall be paid at least the

10   established minimum wage scale specified in this Agreement but in no

11   case less than the established minimum wage scale of the local Agreement

12   covering the territory in which such work is being performed plus all

13   contributions specified in the job site local Agreement.  The Employer

14   shall, in all other matters, be governed by the provisions established

15   in the job site local Agreement.  If employees are sent to work on a

16   project in an area where there is no local Agreement covering the work

17   specified in this Agreement, the full terms and conditions of this

18   Agreement shall apply.


19                             **ARTICLE 27**

20                    **EMPLOYER DESIGNATED REPRESENTATIVE**

21       The Employer designated representative is a General Caulking &

22   Coatings Officer only, and no notice is needed at termination date of

23   contract for re-negotiation.


24                             **ARTICLE 28**

25                            **TERMINATION**

26       Employees terminated by discharge or reduction in force shall be

27   paid, at the time of termination, all wages due them; but any employee

28   who quits will be paid at the next regular pay day and shall receive pay

29   for hours worked only.

30       Any employee being terminated shall be notified of termination in

31   sufficient time to have one-half (½) hour's notice to collect, clean,

This is a copy printed from the IUBAC Document Management System.

FL 0534

1    and pack his tools; and, if such notice is not given, shall be paid for
2    that portion of the hour for which he was not notified.

3        The employer reserves the right to require and receive, when a
4    journeyman or apprentice is discharged or laid off, and before making
5    any payment due, any and all property belonging to the employer that is
6    in the possession of the employee.

7        Any employee discharged for stealing, insubordination, inefficien-
8    cy, failure to perform work as instructed by the foreman, intoxication,
9    not using latrines, fighting, possession or use of narcotics, possession
.0   of a deadly weapon, or not abiding by safety rules and regulations,
.1   shall be paid for hours worked only.

.2       The employer shall notify the job steward of all terminations of
3    employees covered by this Agreement.

4        The parties further agree that when the project nears completion or
5    encounters interruptions in employment, layoffs shall be at the
6    employer's discretion.

7

8                            ARTICLE 29

9                      CHECKOFF AND LOCAL DUES

)        The Employer shall deduct from the wages of each employee who has
l    signed a check-off authorization form conforming to federal law, and
!    transmit monthly to the applicable Local Union (or to any agencies
!    designated by said Union for the collection of such money), the sum for
     which the Local Union has specified, or specifies from time to time and
     so advises the Employer in writing, as the portion of said employee's
     union dues to said Union, to its International Union, or to any other
     affiliate of the International Union, subject to checkoff.  The sums
     transmitted shall be accompanied by a statement, in a form specified by
     the Union, reporting the name of each person whose dues are being paid
     on gross payroll.  Local dues checkoff is three percent (3%) of gross
     wages.

**Page 11 of 25**

AUG-10-05 THU 07:26 AM BAC.LOCAL.1.FL          305 979 8841      P.15

**FL 0534**

1
2
3                          **ARTICLE 30**
4                    **GEOGRAPHICAL JURISDICTION**
3        The following areas are covered by this Agreement: Sumter, Marion,
4    Flagler, Volusia, Brevard, Lake, Orange, Osceola and Seminole Counties,
5    and any other job under contract out of the Orlando office only.
6
7                          **ARTICLE 31**
8                            **WAGES**
9        Payment of wages shall be weekly and during working hours, normally
10   on Friday but, in any event, not later than three (3) days after the
11   close of the payroll period.  However, by mutual consent between the
12   Employer and the Union, this time may be modified.  Payment shall be in
13   currency or company check with a statement of wages, hours worked, rate
14   of pay, and itemized deductions attached.  Furthermore, all employees
15   shall be paid at the job site.  This check will be drawn on a bank which
16   is chartered by the State of Florida.  If a check shall have been
     returned by a bank because of insufficient or uncollected funds, then at
     the option of the Union, payment by that company shall thereafter be
     made in cash.  Any employee forced to wait beyond the normal working
     hours for his pay shall be paid waiting time at the straight time rate.

         Hourly wage rate, number of hours worked, and dates of pay period
     must be on check or payroll envelope.

         Wages due shall be paid to all employees weekly and not later than
     three (3) working days following the week in which earned.

         The first payroll period on or after the following dates:

| Journeyman | 7/1/05 | 7/1/06 | 7/1/07 |
|---|---|---|---|
| Wages | 17.45 | | |
| Health and Welfare | 3.00 | | |
| Local Pension | 1.00 | | |
| International Pension | .35 | | |
| Local Annuity | 1.15 | | |
| Total Package | 22.95 | 23.50 | 24.10 |

         **Foreman:** $1.00 an hour over Journeyman scale
                        FOR CREW OF 3 OR MORE
     .75 PER HR.          **Page 12 of 25**
              OTHERWISE

                 JAB RV

AUG-10-05 THU 07:27 AM BAC.LOCAL.1.FL                305 979 8841            P.16

**FL   0534**

## CONSTRUCTION AGREEMENT

### LOCAL 1 OF FLORIDA, ORLANDO JURISDICTION
### INTERNATIONAL UNION OF BRICKLAYERS AND ALLIED CRAFTSMEN

This will acknowledge that the undersigned, acting for and on behalf of **GENERAL CAULKING & COATINGS COMPANY, INC., OVIEDO, FL.**, hereby accepts, adopts, and agrees to be bound by each and every term and provision, including those which create and require contributions to the Florida Trowel Trades Employees Health and Welfare Fund, and Local 15 & 11 Annuity Pension Fund for the benefit of employees and their dependents, all contained in this Collective Bargaining Agreement made and entered into on July 1, 2001, at Orlando, Orange County, Florida, of the International Union of Bricklayers and Allied Craftworkers and the General Caulking & Coating Company, Inc., Orlando office.

By the executive of this undertaking, the undersigned expressly acknowledges that he has received and examined a true and exact copy of the aforementioned Collective Bargaining Agreement. In addition, the undersigned employer adopts and accepts as his representatives in the administration of the aforementioned Health and Welfare, Pension, International Pension, and Annuity Pension, those trustees who are acting as employer trustees and each and every term and provision of the Trust Instrument pursuant to which said funds are administered.

The aforementioned Collective Bargaining Agreement and Addendum "A", as amended, shall be in full force and effect through June 30, 2008

Accepted for Company:
Carrier:                                          Workers'  Compensation  Insurance

_George KANISTRAS_
Please Print Name                                  _____

_Ac Paints_                       SuiTE140      _____
Signature of Employer Above                         Accepted for Local #1 of Florida:

3004 KANNWOOD CT                      _Keith Braun_
Local Address            Ovieda, Fl. 32765    Keith Braun, Field Representative

407-365-4923                          _8/9/05_
Local Phone Number                                  Date

Copy:  Contractor        General Caulking & Coatings Co., Inc., Oviedo
       Union             IUBAC, Local 1 of Florida, Orlando Jurisdiction
       Administrator     Administrative Services, Inc., Orlando

This is a copy printed from the IUBAC Document Management System.

AUG-10-05 THU 07:28 AM BAC.LOCAL.1.FL          305 979 8841      P.17

FL 0534

## ADDENDUM "A"

In consideration of the conditions contained herein and in the Working Agreement referred to hereafter, and other good and valuable consideration, receipt of which is hereby acknowledged, General Caulking & Coatings Co., Inc. (hereafter, "Employer) and the International Union of Bricklayers & Allied Craftworkers, Local 1 of Florida (hereafter, "Union") enter into this Addendum modifying the terms and conditions of the Union's 2005--2008   Working Agreement (hereafter, "Working Agreement"), a copy of which is attached hereto:

1.   Except as modified herein, the wages, hours and terms and conditions of employment of the Working Agreement shall be in full force and effect as to the Employer and Union.

2.   The trade jurisdiction of the Working Agreement and this Addendum shall not include the installation of paint products, dampproofing, membrane waterproofing, or applications or installations not pertaining directly to caulking and sealants or masonry work.

3.  The Union acknowledges that the employees it represents will be required to work on the installation of materials with other employees working outside the trade jurisdiction of the Working Agreement and this Addendum.  At no time will the Union strike, picket or disrupt any work activities of the Employer for the duration of this Addendum.

4.  At no time will the Employer be responsible to make fringe benefit contributions on behalf of individuals working outside the trade jurisdiction of the Working Agreement as modified by this Addendum, and neither the Union nor the pertinent employee benefit funds will have any right to audit the Employer's payroll records as to such employees.

5.  It will be the Union's sole responsibility to keep the Employer aware of all employees it claims are covered by the trade jurisdiction of this Addendum.

6.  The Union agrees not to solicit employees of the Employer (other than those performing work covered by the trade jurisdiction of this Addendum) to join the Union or otherwise participate in activities of the Union.

FL 0534

1          7.   This Agreement will apply to only the General Caulking &
2    Coatings Co., Inc. office located at 3000 West State Road 426, Oviedo,
3    Florida 32765
4          8.   This Addendum and the Working Agreement it modifies shall be in
5    full force and effect beginning July 1, 2005   and terminating June 30,
6    2008
7

8    In witness whereof, the Union and the Employer by their authorized
9    representatives have set their hands and dates below set forth.

10   ACKNOWLEDGED AND ACCEPTED:

11   INTERNATIONAL UNION OF BRICKLAYERS          GENERAL CAULKING & COATINGS
12   & ALLIED CRAFTWORKERS, LOCAL 1 OF           COMPANY, INC.
13   FLORIDA, ORLANDO JURISDICTION

14   _____                    _____

15   Title: _____                     Title: _____

16   Date: _____                      Date: _____

FL. 0534

## APPRENTICE-IMPROVER-RATES:

The rate for Apprentices and Improvers, shall be as follows, based on the current Journeyman's rate plus

**ALL FRINGE BENEFITS as stated.**

| | | |
|---|---|---|
| **First Year:** | 1st. 6 months | 60% |
| | 2nd. 6 months | 65% |
| **Second Year:** | 1st. 6 months | 70% |
| | 2nd. 6 months | 80% |
| **Third Year:** | 1st. 6 months | 90% |
| | 2nd. 6 months | 95% |

### ARTICLE 32
### SUBCONTRACTING

The Employer agrees not to sublet, assign or transfer any work covered by this Agreement to be performed at the site of a construction or maintenance project to any person, firm or corporation, except where the subcontractor subscribes and agrees in writing to be bound by the full terms of this Agreement and complies with all of the terms and conditions of this Agreement.

All charges of violations of this Article shall be considered as a dispute and shall be processed in accordance with the provisions of this Agreement covering the procedure for the handling or disputes and the final and binding arbitration of disputes.

### ARTICLE 33

### DURATION

This Agreement shall become effective the first full payroll period commencing on or after July 1, 2005 and continue in full force and effect until June 30, 2008 the anniversary date, and for successive one year periods thereafter until terminated or modified by either party. IN WITNESS WHEREOF, the parties hereto have executed this Agreement.

GENERAL CAULING & COATINGS, INC.
OVIEDO, FL 32765

8-9-05
**Date**

INTERNATIONAL UNION OF BRICKLAYERS
AND ALLIED CRAFTWORKERS, LOCAL #1
OF FLORIDA ORLANDO JURISDICTION.

**Keith Brault**
Field Representative

8/9/05
**Date**

This is a copy printed from the IUBAC Document Management System.